STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-16-349

JUDITH D. TENZYK
and DEANNE ROSSELLI,

Plaintiffs

v.

CATHERYN M. INGERSON,

Defendant

REC'D CUMB CLERK'S F
FEB '18 PM 2:58

ORDER ON DEFENDANT'S
MOTION TO ENFORCE

Before the court is defendant's motion to enforce the parties' settlement agreement. Def.'s Ex. 1.) For the following reasons, the motion is granted.

Facts

Pursuant to the agreement, defendant had until December 31, 2017 to sell the property at issue for $100,000.00 to be paid by plaintiff Tenzyk. In the alternative, defendant had the option to pay plaintiff Tenzyk $100,000.00 by December 31, 2017 in lieu of selling the property and defendant would receive a quitclaim deed. (Def.'s Ex. 1, Settlement Agreement ¶ 1.) Plaintiff Tenzyk's attorney would prepare any necessary deeds. (Def.'s Ex. 1, Settlement Agreement ¶ 5.) The settlement agreement is silent on any notice requirements or time frames.

On December 21, 2017, defendant's attorney emailed plaintiffs' attorney and notified him that defendant was borrowing money to pay plaintiffs and requested a release/discharge. (Def.'s Ex. 2.) On December 21, 2017, a representative from Atlantic Federal Credit Union sent an email

1

to defendant's attorney and stated that the credit union was prepared to close the loan for defendant on December 28, 2017. (Def.'s Ex. 3.)

On December 22, 2017, plaintiffs' attorney emailed defendant's attorney and stated that plaintiffs would not attend the closing and that plaintiffs' attorney would send a deed to defendant's attorney that day for review and approval. Plaintiffs' attorney stated that additional documents could be emailed to plaintiffs at the time of the closing or the following week. Plaintiffs' attorney stated further that the proceeds should be divided equally and in separate checks to each plaintiff. (Def.'s Ex. 4.)

Later on December 22, 2017, plaintiffs' attorney's legal assistant sent to defendant's attorney a quitclaim deed and a real estate transfer tax form for his review. The legal assistant requested that defendant's attorney let the assistant know if defendant's attorney had any questions or revisions. (Def.'s Ex. 5.) On the same day, defendant's attorney replied that "[t]his looks fine to me to proceed with." (Def.'s Ex. 5.) On December 23, 2017, plaintiffs' attorney emailed defendant's attorney and stated,

> [m]y client is not willing to close next week. We have been given no advance notice of this impending closing and my clients cannot accomplish getting documents signed on such short notice and want me to be at the closing. The failure to provide adequate notice will move this closing into January and my clients expect to receive the additional $10,000. They do not agree to close in escrow. I am away next week and will address all issues beginning January 2nd.

(Def.'s Ex. 5.)

Conclusions

Under Maine law, "[s]ettlement agreements are analyzed as contracts." Marie v. Renner, 2008 ME 73, ¶ 7, 946 A.2d 418. Whether a binding settlement agreement exists is a question of fact. Id. In this case, the parties do not dispute that a settlement agreement exists or the terms of

the settlement agreement. (See Def.'s Mot. to Enforce ¶ 1; Tenzyk Aff. ¶ 2.) Further, the terms of the settlement agreement are incorporated into the Consent Order of Dismissal. Tenzyk v. Ingerson, CUMSC-RE-2016-349 (Me. Super. Ct. Cumberland Cty., May 16, 2017). Consequently, a binding settlement agreement exists and is apparent from the filings. See Marie, 2008 ME 73, ¶ 7, 946 A.2d 418.

The dispute in this case concerns whether defendant must pay a $10,000.00 penalty because of the failure to close on the sale of the property by December 31, 2017 as required by the settlement agreement. Defendant argues that she is not required to pay the $10,000.00 penalty because plaintiffs breached the settlement agreement by failing to provide a quitclaim deed. (Def.'s Mot. to Enforce ¶ 19.) Plaintiffs argue that the failure to perform under the agreement was caused by defendant's failure to provide reasonable notice of her intent to purchase a quitclaim deed from plaintiffs. (Pls.' Opp. to Def.'s Mot. to Enforce ¶ 11.) Plaintiffs argue that defendant is at fault for the failure to close and must pay the penalty. (Id.)

"Prevention of performance is a breach of contract that excuses further performance by the non-breaching party." Morin Bldg. Products Co. v. Atlantic Design & Constr. Co., 615 A.2d 239, 241 (Me. 1992). "Where the duties of performance are to be concurrent, such as payment by the purchaser and conveyance by the vendor, performance by one party or a tender of performance is a prerequisite in order to demand performance by the other party or to put the other party in default." Pelletier v. Dwyer, 334 A.2d 867, 870 (Me. 1975) (holding that a seller who did not provide sufficient proof of his willingness and ability to convey a deed was not entitled to retain the buyers deposit). "[T]he tender must be such as to manifest a willingness to perform in compliance with the agreement." Id. at 871.

3

Ten days before the December 31, 2017 deadline, defendant's attorney gave plaintiffs' attorney notice that defendant intended to pay plaintiffs $100,000.00. Defendant's credit union was prepared to close. Plaintiffs' attorney responded to defendant's attorney that plaintiffs would not attend the closing, a deed would be sent to defendant's attorney for review, additional documents could be emailed to plaintiffs at the closing or later, and the proceeds should be divided equally in separate checks to plaintiffs. Defendant's attorney reviewed the deed and real estate transfer tax form sent by plaintiffs' attorney's legal assistant. Defendant's attorney replied that everything was fine and the parties could proceed.

Thereafter, plaintiffs unambiguously refused to provide a quit claim deed by the December 31, 2017 deadline and wanted their attorney, who was not available until January 2018, to be present at the closing. Plaintiffs also refused to proceed with an escrow closing. The terms of the settlement agreement do not prohibit the parties from closing in escrow and do not require the parties' physical presence at the closing.

The only time requirement in the settlement agreement was the December 31, 2017 deadline for defendant either to sell the property or purchase a quitclaim deed. The fact that ten days' notice of defendant's intent to perform pursuant to paragraph one of the settlement agreement was reasonable is supported by the fact that the attorneys agreed to all aspects of the closing before plaintiffs objected and demanded an additional $10,000.00.

Defendant did "manifest a willingness to perform in compliance" with the time requirements of the settlement agreement; plaintiffs did not. See Pelletier, 334 A.2d at 871. Plaintiffs failed to perform under the terms of the agreement. See Morin Bldg. Products Co., 615 A.2d at 241; Pelletier, 334 A.2d at 871.

4

The entry is

Defendant's Motion to Enforce Settlement Agreement is GRANTED. Within fifteen days of the date of this order, Defendant will pay to Plaintiff Tenzyk the sum of $100,000.00 in lieu of selling the property and Plaintiffs will provide a quitclaim deed to Defendant at the time of payment/

Date: April 9, 2018

Nancy Mills
Justice, Superior Court